# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NATHANIEL SMITH | No. 3:16-cr-48 (MPS) |

## RULING ON DEFENDANT'S EMERGENCY MOTION TO REDUCE SENTENCE

On April 7, 2017, the Court sentenced the defendant, Nathaniel Smith, to 146 months' imprisonment after he pled guilty to enticing a minor to engage in illegal sexual activity in violation of 18 U.S.C. § 2422(b). (ECF No. 65.) Smith has been incarcerated for 50 months. His anticipated release date from federal custody is July 19, 2026.[1] On April 5, 2020, the defendant filed an "Emergency Motion for Release" under the First Step Act, 18 U.S.C. § 3582(c)(1)(A), on the grounds that his medical condition puts him at heightened risk of "serious illness and death" should he contract COVID-19.[2] (ECF No. 70 at 1.) The Government opposes the request. (ECF No. 79.) On April 13, 2020, I heard oral argument. For the reasons that follow, I deny the motion.

## I.    FACTS

I assume familiarity with the underlying facts of the defendant's offense as set forth in the presentence report and the Government's brief and provide only a summary. In January 2016, the defendant, then 29 years old, used the Internet to video chat with a 13-year-old girl. Later the same month, the defendant traveled from his home in Colorado to Connecticut, where the minor victim resided, to bring her back to Colorado to live with him. After the defendant picked her up from

---

[1] See Find an Inmate, https://www.bop.gov/inmateloc/ (inserting Smith's register number of 24787-014, the BOP estimates a release date of July 19, 2026).

[2] On March 13, 2020, President Trump declared a National Emergency concerning COVID-19. Proclamation No. 9994, 85 Fed. Reg. 15337 (Mar. 13, 2020).

her home, the minor victim, at defendant's request, performed oral sex on the defendant and had sexual intercourse with him.  Afterwards, the victim contacted her family and was recovered at a hotel in New London, Connecticut.  The defendant was arrested and charged with Use of Interstate Facility to Entice a Minor to Engage in Sexual Activity in violation of 18 U.S.C. § 2422(b).  While in jail and in violation of a state protective order, the defendant sent the minor victim a letter promising that he would "wait" for her, stating that he hoped she would "wait [for him] too," and asking her to send him pictures of her.  (PSR at ¶ 28.)

The calculated Guidelines range for the defendant's conviction was 324-405 months.  At sentencing, the Court received extensive evidence, including expert testimony, regarding the defendant's medical condition, Myotonic Muscular Dystrophy Type 1 ("DM1"), a multisystem, genetic, degenerative neurological disorder.  The Court imposed a sentence of 146 months, making both a significant downward departure from the Guidelines range under U.S.S.G. Sec. 5H1.3 "due to the impact of the defendant's rare and severe condition on his conduct," and a significant further downward variance for other factors, including that the defendant would not receive credit for time served while in state custody due to the pending state charges.  (ECF No. 65.)  The defendant is currently incarcerated at the United States Penitentiary in Marion, Illinois.  He is 33 years old.

After the Court imposed sentence, the Connecticut Superior Court, where the defendant had pled guilty to charges arising from the same conduct described above, imposed an eleven-year sentence on the defendant, to run concurrently with the federal sentence.  The State of Connecticut has lodged a detainer with the Bureau of Prisons and requested that it be notified if the defendant is released before April 9, 2028.  (ECF No. 79-1 at 1.)

## II.    DISCUSSION

The defendant moves for a sentence reduction to time served under 18 U.S.C. § 3582(c)(1),

2

which provides, in pertinent part that:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>> (i) extraordinary and compelling reasons warrant such a reduction; . . . .
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .[3]

18 U.S.C. § 3582(c)(1)(A).

"Accordingly, in order to be entitled to relief under the statute, [the defendant] must both meet the exhaustion requirement and demonstrate that 'extraordinary and compelling reasons' warrant a reduction of his sentence." *United States v. McCarthy*, No. 3:17CR230(JCH), 2020 WL 1698732, at *3 (D. Conn. Apr. 8, 2020).  I find that he has done neither.

**A**.   **Exhaustion**

A defendant may bring a motion under 18 U.S.C. § 3582(c) only "after [he] has full fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion

---

[3] The relevant Sentencing Commission policy statement is found in U.S.S.G. § 1B1.13. That section provides that the Court may reduce the term of imprisonment if "extraordinary and compelling reasons warrant the reduction," *id.* § 1B1.13(1)(A); "the Defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," *id.* § 1B1.13(2); and "the reduction is consistent with this policy statement," *id.* § 1B1.13(3).  The Commission has not amended the 2016 policy statement since Congress passed the First Step Act in 2018.  As a result, "[t]here is no policy statement applicable to motions for compassionate release filed by defendants under the First Step Act." *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *13 (M.D.N.C. June 28, 2019).  Thus, "[w]hile the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)." *Id. See United States v. Almontes*, No. 3:05CR58(SRU), 2020 WL 1812713, at *3 (D. Conn. Apr. 9, 2020)("nearly all district courts hold that—since the FSA's passage—section 1B1.13 is not binding but is, rather, helpful guidance.").

on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i).  The defendant submitted a request for compassionate release to the warden at USP Marion on April 3, 2020.  (ECF No. 70-9.)  He concedes that the present motion was filed before the expiration of thirty days "from the receipt of such a request by the warden of the defendant's facility," § 3582(c)(1)(A)(i), and that he has not exhausted his administrative remedies.  He argues that the Court may waive the exhaustion requirement, citing *Washington v. Barr*, 925 F.3d 109 (2d Cir. 2019) (imposing an exhaustion requirement as a "prudential rule of judicial administration," subject to "broad" exceptions).  (ECF No. 70-1 at 31-32.)  The Government disagrees and maintains that the Court cannot waive exhaustion, relying on *Ross v. Blake, ___ U.S. ___,*136 S. Ct. 1850, 1857 (2016)(for "a statutory exhaustion provision . . . Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to.") (ECF No. 79 at 9-10.)

The Second Circuit has not yet determined whether the exhaustion requirement in § 3582(c)(1) is subject to waiver and district courts have divided over the issue.  *Compare United States v. McCarthy*, No. 3:17CR230(JCH), 2020 WL 1698732, at *4 (D. Conn. Apr. 8, 2020) (citing *Washington v. Barr* and concluding court may waive § 3582(c)(1)(A)'s exhaustion requirement); *United States v. Colvin*, No. 3:19CR179(JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) (same) with *United States v. Gross*, No. 15-CR-769(AJN), 2020 WL 1862251, at *1 (S.D.N.Y. Apr. 14, 2020) ("§ 3582(c)(1)(A)'s exhaustion requirement cannot be waived by this Court"); *United States v. Roberts*, No. 18-CR-528(JMF), 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020) (citing *Ross v. Blake* and concluding that the court may not disregard § 3582(c)'s express statutory exhaustion requirement).  I find the latter cases more persuasive and for substantially the reasons set forth in *United States v. Roberts*, I view the exhaustion requirement in § 3582(c) as

4

mandatory and not subject to exceptions for futility or other judge-made exceptions.[4]   The

defendant has not met the threshold exhaustion requirement and his motion must thus be denied.

**B.        The Merits: Whether A Reduction Is Warranted**

Even if the defendant had exhausted his administrative remedies, however, I would find

that he has not demonstrated that the requested sentence reduction is warranted under 18 U.S.C.

§  3582(c)(1)(A).

The defendant argues that his DM1 condition puts him at heightened risk for serious illness

from COVID-19 and that this risk constitutes an extraordinary and compelling reason warranting

his release.  (ECF No. 70-1 at 21.)  In support, he points to evidence of his significant health issues

from DM1, including his cardiac and respiratory conditions and decreased life expectancy.  *See*

ECF No. 70-1 at 17-19.  But, as the defendant notes, all these issues were documented in his PSR

and sentencing memorandum.  (ECF No. 70-1 at 17.)  The Court heard extensive evidence as to

the manifestations of the defendant's illness and prognosis and was fully informed as to his medical

condition during sentencing.  As indicated, the defendant's health condition and its impact on his

conduct were the basis for the Court's downward departure under Section 5H1.3 of the Sentencing

Guidelines.  To be sure, at the time of sentencing, the Court did not contemplate the emergence of

a pandemic that now poses an additional threat to the defendant's health.  But contrary to

suggestions in the defendant's brief, the recent medical records from the Bureau of Prisons

("BOP") do not show that his health has materially declined since he has been at the BOP.

Although there is some evidence in these documents that the defendant's mobility has diminished

---

[4] Of course, the statute's mandatory character does not mean that it affects the Court's jurisdiction
and thus that the Government could not waive the defendant's failure to comply with the
exhaustion requirement.  Because the Government has not waived the point here, however, I have
no occasion to address this issue.

(use of a cane (ECF No. 77 at 19), a reported fall (ECF 77 at 11)), on the whole, the records are unremarkable and do not show significant decline in the defendant's underlying condition. *See* ECF No. 77 at 3 (seen 3/26/20 for "mild" cough and sinus congestion/no fever); ECF No. 77 at 5 (seen 3/23/20 for cold symptoms/possible respiratory infection); ECF No. 77 at 8 (no show on 1/16/20 at chronic care clinic); ECF No. 77 at 15 (seen 10/15/19 for a complaint of a swollen lymph node); ECF No. 77-33 (refused flu shot on 10/18/19). Contrary to the defendant's argument, the evidence falls short of demonstrating that the defendant falls into the category of inmates who are "suffering from a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, application note 1(A). (ECF No. 70-1 at 17.)[5] Indeed, despite the defendant's reportedly low IQ and alleged "difficulty getting timely treatment," (ECF No. 70-1 at 3), the records show that the defendant retains the ability to seek and obtain treatment and medication within the health care system at the BOP. ECF No. 77 at 3-6 (documenting two visits by defendant to health services over three days for nasal congestion and "mild" cough); *id.* at 12 (defendant presenting to medical on 12/16/19 following reported fall and injury to lip); *id.* at 15 (defendant presenting to medical on 10/15/19 with complaint of apparently swollen lymph node); *id.* at 35 (email from defendant to BOP health services asking if they stocked a particular drug).

The Court in no way discounts the health threat posed by COVID-19 to inmates, who are unable to maintain the social distancing that public health experts recommend to reduce the risk of infection. Nor does it dispute that the defendant's DM1 condition places him in a category of

---

[5] As noted, note 3, *supra*, I am not suggesting that satisfying the language of the Application Notes to the Guidelines' policy statement is a prerequisite to a finding of "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A).

persons who are especially vulnerable to that threat.  However, the fact that the defendant, like many others, suffers from health conditions that place him at higher risk for severe illness from contracting the virus is not, by itself, dispositive.[6]  In deciding whether to reduce the defendant's term of imprisonment to time served, I must also consider the factors under 18 U.S.C. § 3553(a), 18 U.S.C. § 3852(c)(1)(A) (stating that the court may reduce a term of imprisonment, "after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that (i) extraordinary and compelling reasons warrant such a reduction"), and these weigh heavily against release in this case.  The Section 3553(a) factors include the following: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed" to serve the purposes of sentencing, including punishment (i.e., the need to reflect the seriousness of the offense, promote respect for the law, and afford just punishment), deterrence, protection of the public, and rehabilitation; (3) the Sentencing Guidelines, (4) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" and (5) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

The defendant's crime was undeniably serious.  He used the Internet to groom a child, including asking for nude images of her and sending her pornography.  And he traveled almost 2000 miles in a scheme to take her from her home in Connecticut and bring her to Colorado to live with him.  Once in Connecticut, he sexually assaulted her.  He has not served even half of his

---

[6] Further, as described in the Government's brief, the BOP is taking significant measures and has implemented safeguards to protect inmates.  *See* ECF No. 79 at 14 (describing BOP's preventive and mitigation measures, including screening inmates and staff, suspending visits, limiting inmate movements between facilities, implementing social distancing, and confining inmates to their living quarters.)  As of the date of defendant's motion, USP Marion did not have any reported cases of COVID-19, although I realize that could change at any time.

sentence, a sentence that already is substantially below the Guidelines range. Perhaps most importantly, the defendant's DM1 condition did not at the time of the offense, and does not now, stop him from being a danger to the community, and I have no basis to conclude that he no longer poses such a danger. While incarcerated, he defied a protective order and contacted the minor victim, promising that he would "wait" for her and asking her to send him pictures of herself. His health condition did not prevent him when he committed the offense of conviction, and would not prevent him now, from using the Internet to communicate with minors. As the Government points out, the defendant's proposed release plan would place him in the same household with the same adults where and with whom he lived when he committed the offense of conviction; one of those adults suffers from the same DM1 condition afflicting him, and the other is approximately 76 years old. Under the circumstances of this case, I cannot say that releasing him, even with the restrictive conditions he proposes, would be consistent with my obligation to take full account of the need to protect the public. Nor can I conclude that, even in the new light cast by the public health crisis, a sentence of 50 months would be sufficient to satisfy the purposes of sentencing. Such a sentence would not adequately reflect the seriousness of the defendant's offense, promote respect for the law, provide adequate deterrence to the defendant and others, or, as noted, protect the public from the defendant. I therefore deny the defendant's motion.[7]

---

[7] The State of Connecticut's detainer poses another obstacle for the defendant, and casts further doubt on his ability to show that there are "compelling" reasons to grant the requested sentence reduction. As noted above, after this Court sentenced him, the defendant was sentenced in Connecticut state court to a total of eleven years' incarceration for illegal sexual contact in violation of Conn. Gen. Stat § 53a-21(a)(2) and violation of a protective order under Conn. Gen. Stat. § 53a-223. On April 12, 2017, Connecticut lodged a detainer with the BOP, which states that if the BOP releases the defendant before April 9, 2028, the BOP should notify the State "at least 60 days in advance of his release so that [the State of Connecticut] can assume custody of him." (ECF No. 79-1 at 1.) The detainer raises a host of issues.

The Government argues that the defendant's proposed release plan is "impossible" because if this Court were to grant the motion directing the BOP to release the defendant from federal

**III.    CONCLUSION**

For the foregoing reasons, the defendant's "Emergency Motion for Release" (ECF No. 70)

is DENIED.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
              April 17, 2020

---

custody, the State of Connecticut would assume custody.  (ECF No. 79-1 at 15.)  The defendant responds that the detainer is not a bar to granting his motion.  According to the defendant, the detainer merely requires the BOP to give the State of Connecticut notice of his release and it is not clear that the State would take him into custody.  Defense counsel represents that in the event the State did pursue custody, the defendant has separate counsel who is exploring avenues for release from the Connecticut Department of Correction in state court – including a habeas corpus petition. (It does not appear that the defendant would meet the requirements of Connecticut's compassionate release statute, Conn. Gen. Stat. § 54-131k(a).)  Because of the uncertainties presented by the detainer, the defendant requests that the Court grant his § 3582 motion but stay the order until the State of Connecticut determines how to proceed regarding the detainer.  In other words, the defendant asks the Court to find "compelling" reasons warranting release when it is not, in fact, clear that an order by this Court reducing the defendant's sentence would result in his release. However, because I find, independently of the thorny issues raised by the detainer, that the requested reduction is not warranted, I need not resolve those issues.